GEORGIA ASSOCIATION OF RETARDED CITIZENS, et al., Plaintiffs–Appellants,

v.

Dr. Charles McDANIEL, in his official capacity as State Superintendent of schools, et al., Defendants–Appellees.

No. 87–8586.

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1988.

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

Phyllis J. Holmen, Jonathan A. Zimring, Atlanta, Ga., for plaintiffs-appellants.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Griffin B. Bell, Jr., Fisher & Phillips, Lawrence S. McGoldrick, Atlanta, Ga., for defendants-appellees.

Before FAY and CLARK, Circuit Judges, and GUIN *, District Judge.

CLARK, Circuit Judge:

█ This case concerns the retroactive application of the attorney's fee provision of the Handicapped Children's Protection Act ("HCPA") of 1986, 20 U.S.C. § 1415(e). Because Congress did not clearly express an intention to have the HCPA apply to final judgments rendered prior to the date the Act became law, we hold, in light of the constitutional difficulties that would otherwise arise, that the Act may not be so construed.

I.

This lawsuit was filed in 1978 to redress alleged violations of the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1401 *et seq.* and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In an order dated April 3, 1981, the district court granted various forms of declaratory and injunctive relief to the plaintiffs. *Georgia Association of Retarded Citizens v. McDaniel,* 511 F.Supp. 1263 (N.D.Ga. 1981). A panel of this court affirmed the district court's judgment. 716 F.2d 1565 (11th Cir.1983). The Supreme Court vacated our judgment and remanded the case in light of its decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). *See McDaniel v. Georgia Association of Retarded Citizens,* 468 U.S. 1213, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984). In *Smith,* the Court held that a plaintiff asserting a valid claim under the EHA could not seek attorney's fees under 42 U.S.C. § 1988 nor proceed simultaneously and seek fees under the Rehabilitation Act. On remand, we modified our opinion so as to make clear (1) that it affirmed only that portion of the district court's judgment granting relief under the EHA and (2) that a statement regarding the availability of

* Honorable J. Foy Guin, Jr., U.S. District Judge for the Northern District of Alabama, sitting by    designation.

attorney's fees was incorrect. *Georgia Ass'n of Retarded Citizens v. McDaniel*, 740 F.2d 902, 903 (11th Cir.1984) (*"GARC III "*), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1228, 84 L.Ed.2d 365 (1985).

Prior to the first appeal of this case to the Eleventh Circuit, the plaintiffs filed a motion in the district court for costs and attorney's fees. Upon motion by the local defendants, a ruling on this motion was stayed pending appeal. Subsequent to the issuance of the mandate in *GARC III*, the plaintiffs asked the district court to delay ruling on the motion for attorney's fees until Congress had time to act upon the bill which led to the enactment of the HCPA. In an order dated August 19, 1985, however, the district court, following *Smith,* denied the motion for attorney's fees.[1] No appeal was taken from this order.

The HCPA became effective on August 5, 1986. A few weeks thereafter, the plaintiffs filed a new motion for attorney's fees. In an order dated June 29, 1987, the district court held that the HCPA could not be construed as providing a basis for attorney's fees in this case because such a construction would have the effect of voiding the court's earlier, unappealed judgment denying attorney's fees.

## II.

It is section 5 of the HCPA that makes section 2 of the Act expressly retroactive to the date of the Supreme Court's decision in *Smith:*

Sec. 5.

The amendment made by section 2 [providing for attorney's fees to prevailing parents in EHA actions] shall apply with respect to actions or proceedings brought under section 615(e) of the Education of the Handicapped Act after July 3, 1984, and actions or proceedings brought prior to July 4, 1984, under such section which were pending on July 4, 1984.

Pub.L. No. 99–372, 100 Stat. 796 (Aug. 5, 1986). The plaintiffs argue that this provi-

sion, tied directly to a specific date of a Supreme Court decision, compels the conclusion that Congress intended to remove all impediments to a recovery of attorney's fees by those whom the decision affected adversely.

In support of their position, the plaintiffs have seized upon certain language in *Fontenot v. Louisiana Board of Elementary and Secondary Education,* 805 F.2d 1222 (5th Cir.1986), where Judge Goldberg discusses Congress' intent in enacting the HCPA:

Congress read the Supreme Court's decision in *Smith* and acted swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent.

\* \* \* \* \* \*

In explicitly providing for attorney's fees, Congress reversed the outcome mandated by *Smith* for plaintiffs asserting claims to enforce rights that attach under the EHA. Moreover, *to abrogate fully any residual effect of* Smith, *Congress made the amendments to the EHA effective retroactive to the date of the Smith decision.*

*Id.* at 1223, 1224 (emphasis added). The factual and legal distinctions between *Fontenot* and this case are sufficient to make it certain that the last sentence of this statement is inapplicable here. First, in *Fontenot,* the appeal of the district court's first denial of attorney's fees was pending before the Fifth Circuit when Congress passed the HCPA. Thus, the question of the right to attorney's fees remained "live." Here, the plaintiffs did not appeal. Second, there was no constitutional challenge to the retroactive application of the Act. It is therefore clear that Judge Goldberg did not have in mind the legal question present here when he wrote that Congress intended to "abrogate" all effects of *Smith.*

One district court has read *Fontenot* in a manner favorable to the plaintiffs. *Tatro v. State of Texas,* E.H.L.R. Dec. 558:430 (N.D.Tex.1987), as the plaintiffs note, is a

---

1. The motion for costs is the subject of a separate appeal. *See Georgia Association of Retard-* *ed Citizens v. McDaniel,* 855 F.2d 794 (11th Cir. 1988).

"procedural twin" to this case. In *Tatro,* the court granted a motion for attorney's fees based on the HCPA, even though the Supreme Court, had reversed an earlier award of fees on the authority of *Smith. See Irving Independent School District v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). The defendants contested the retroactive application of the HCPA, raising what appears to be the same argument made by the defendants in this case. The court considered the *Fontenot* language quoted above to be dispositive. Yet, as we have explained, *Fontenot* is no authority for the proposition that the HCPA may constitutionally alter the effect of a final judgment entered prior to *Smith* from which no appeal was taken.

In interpreting this provision, we are guided first by the principle, "expressed in varying degrees in strength," "that a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'" *Union Pacific R. Co. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (citations omitted), *quoted in United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct.

407, 413, 74 L.Ed.2d 235 (1982). *See also United Sates Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.,* 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908) ("The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other."). While there can be no doubt that Congress intended the HCPA to receive retroactive application, these principles should govern the determination as to the precise *scope* of the Act's retroactive application, especially since we are also obliged, when it is "fairly possible," to construe a statute in a manner that does not call that statute into constitutional doubt. *See Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979).

The question is simple to pose: did Congress, by the language contained in the HCPA's retroactivity provision, intend for the HCPA to apply to cases in which final, unappealed judgments had been rendered prior to the statute's enactment date? The language of the HCPA's retroactivity provision is certainly not conclusive. Congress did not expressly provide that the Act should so apply.[2] If the Act were to be

---

**2.** Nor does the legislative history support the position that Congress intended to affect final judgments. Senator Weicker, the sponsor of both the original EHA and HCPA explained that the latter Act was "intended to be a simple restoration and clarification of congressional intent." *Handicapped Children's Protection Act of 1985: Hearing on S. 415 Before the Subcomm. on the Handicapped of the Comm. on Labor and Human Resources,* 99th Cong. 1st Sess. 2 (1985). The senator's views are also amply reflected in the Senate Report accompanying S. 415 which was passed in lieu of a similar House bill:

Congress' original intent was that due process procedures, including the right to litigation if that became necessary, be available to all parents. On July 5, 1984, the Supreme Court, in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457 [82 L.Ed.2d 746] (1984), determined that Congress intended that the EHA provide the exclusive source of rights and remedies in special education cases covered by that act. The effect of this decision was to preclude parents from bringing special education cases under section 504 of the Rehabilitation Act of 1973, and recovering attorney's

fees available under section 505 of that act, where relief was available under the EHA.

Specifically, in *Smith v. Robinson,* the Court ruled that when a remedy "provided under section 504 is provided with more clarity and precision under EHA, a plaintiff may not circumvent or enlarge on the remedies available under EHA by resort to section 504." The Court reasoned that the comprehensiveness and detail with which EHA addresses the provision of special education for handicapped children implies that Congress intended to limit remedies to those explicitly provided for in the EHA.

The situation which has resulted from the *Smith v. Robinson* decision was summarized by Justices Brennan, Marshall, and Stevens in their dissenting opinion: "Congress will now have to take the time to revisit the matter." Seeking to clarify the intent of Congress with respect to the educational rights of handicapped children guaranteed by the EHA, the HAndicapped Children's Protection Act of 1985 was introduced on February 6, 1985.... On June 11, 1985, the Subcommittee unanimously reported S. 415 with amendment to

interpreted in the manner urged by the plaintiffs, one would be required to conclude that Congress intended to "reverse" the outcome in the *Smith* case itself, giving the *Smith* plaintiffs a second chance at attorney's fees when the Supreme Court had held they were entitled to none. As we explain below, Congress may not—and typically does not—undertake to "reverse" the result that obtains in a particular Supreme Court decision. We doubt that it intended to do so in passing the HCPA.

■ To be sure, the Act is to apply to all cases "pending" on July 4, 1984. On that date this case was before the Supreme Court, certiorari having been granted simultaneously with the resolution of the merits on July 5, 1984. As the Supreme Court has explained, however, " '[p]ending' is simply not a term of art that unambiguously carries with it [any one] meaning." *International Union of Electrical Workers v. Robbins & Myers Inc.*, 429 U.S. 229, 243, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976) ("pending" EEOC charge could be one which was "not yet rejected" on date of legislation). We conclude that, for the purposes of section 5 of the HCPA, the class of cases "pending" on July 4, 1984 does not include a case in which a final judgment as to attorney's fees was rendered and became unappealable before August 5, 1986.

We are not the first court of appeals to so interpret legislation made retroactive to all proceedings "pending" on a given date. Such a course was followed by the D.C. Circuit in *Daylo v. Administrator of Veterans' Affairs*, 501 F.2d 811 (D.C.Cir.1974). In *Daylo*, a veteran's widow had brought suit in 1969 to compel payment of certain death compensation benefits which had been denied her for many years. Legislation passed by Congress in 1962 required a widow to prove that she had not remarried before she could receive these death benefits. This statute was applied prospective-

ly (after 1962) only. Thus, the district court granted summary judgment to Mrs. Daylo with respect to all benefits which had accrued prior to 1960. The Administrator of Veterans' Affairs did not appeal this judgment. The district court gave the Administrator 120 days to comply with its order. Before this period had elapsed, Congress enacted 38 U.S.C. §§ 211(a) and 3111 (1970). The first of these statutes made certain decisions of the Administrator as to any "question of law or fact under any law administered by the [VA] providing benefits for veterans and their ... survivors" conclusive; it also withdrew federal court jurisdiction to review such decisions; the second had the effect of shifting to a veteran's widow the burden of proving that she had not remarried with respect to all pre–1962 instances of alleged remarriage. Armed with these two statutes, the Administrator filed a motion under Fed.R.Civ.P. 60(b) to seek relief from the district court's judgment as to pre–1962 benefits. The Administrator argued that the first statute conflicted with the judgment in favor of Mrs. Daylo "by retroactively withdrawing jurisdiction of the court which [had] entered [it], thus rendering [it] void." 501 F.2d at 815. He also argued that the second absolutely prohibited the payment ordered by the district court.

The court concluded that, although Congress had made the "no review" provision of 38 U.S.C. § 211(a) *retroactive to 1940*, these statutes could not properly be interpreted as expressing a congressional intent to annul those judgments based on prior law. The court acknowledged that it was "conceivable that Congress intended such judgments to fall," but it held that because such "intent was nowhere clearly expressed," this construction was to be avoided in light of the constitutional difficulties that this construction would pose. *Id.* at 823.

the full Committee. On July 10, 1985, the full Committee unanimously moved to order the bill, as amended, reported to the Senate. S.Rep. No. 112, 99th Cong., 1st Sess. 2, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1798, 1799.

The views expressed in these fragments show that Congress disagreed fundamentally with *Smith* and considered it a misinterpretation of the EHA. They do not suggest, however, that Congress intended—or even believed it had the power—to reach those cases decided on the basis of *Smith* that had become unappealable.

As in *Daylo*, it is conceivable that Congress intended to annul those judgments based on *Smith* that became final, and unappealable prior to the HCPA's date of enactment. In light of the fact that Congress did not clearly express such an intent, the constitutional difficulty associated with this interpretation require the Act to be construed otherwise.

### III.

■ If, as the plaintiffs claim, the HCPA was designed to reach cases such as this one, it would conflict manifestly with a longstanding rule which insulates certain adjudicated rights from the reach of the legislature. As the Supreme Court explained in *McCullough v. Virginia*, 172 U.S. 102, 123–24, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898),

> It is not within the power of the legislature to take away rights which have been once vested by judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

The constitutional dimension of this principle, sometimes labelled the "vested rights" doctrine, is twofold. First, it recognizes that rights *fixed by judgment* are, in essence, a form of property over which legislatures have no greater power than any other. *See Tonya K. v. Board of Education of City of Chicago*, 847 F.2d 1243, 1247 (7th Cir.1988) (citing *Hodges v. Snyder*, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819 (1923)). Second, consistent with the separation of powers, it protects judicial action from superior legislative review, "a regime [that would be] obviously inconsistent with due process of law and subversive of the judicial branch of government." *Daylo*, 501 F.2d at 816. *See also United States v. Board of Education of City of Chicago*, 588 F.Supp. 132, 235 (N.D.Ill.1984) (rule protects finality and independence of judicial action); *Personal Finance Co. of Braddock v. United States*, 86 F.Supp. 779, 784 (D.Del.1949) (retroactive application of legislation to "past controversies" constitutes unauthorized exercise of judicial power).

Following these general principles the district court ruled that the retroactive application of the HCPA urged in this case would, if permitted, have the effect of voiding the district court's prior unappealed judgment based on *Smith*.[3] The plaintiffs have launched various attacks against the district court's judgment and have offered explanations as to how the HCPA may be constitutionally construed so as to apply to this case. We now turn to those arguments.

The plaintiffs' first argument depicts the district court's judgment as erroneous ap-

---

**3.** We note that the district court did not, as is required by 28 U.S.C. § 2403(a) and Fed.R.Civ. P. 24(c), notify the Attorney General that this case raised a question of the HCPA's constitutionality. Section 2403(a) and Rule 24(c) are designed to permit the United States to intervene whenever "the constitutionality of an Act of Congress affecting the public interest is called into question." 28 U.S.C. § 2403(a). "Giving of this notice is mandatory, even if the court thinks the constitutional question frivolous, but failure to give the notice does not deprive the court of jurisdiction in the case." C. Wright, A. Miller & M. Kane 7C *Federal Practice and Procedure* § 1915 (1986). We are likewise not deprived of jurisdiction to decide this appeal. Since we are not striking down any portion of the HCPA, "there seems to be no practical purpose to be served in remanding the case to the Court below with directions to allow intervention by the United States." *Thatcher v. Tennessee Gas Transmission Co.*, 180 F.2d 644, 648 n. 7 (5th Cir.), *cert. denied*, 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950). Nonetheless, when circumstances such as this have arisen in the past, to fulfill the purposes of section 2403(a), we have afforded the United States an opportunity to intervene so that it may participate in any further review by this court or by the Supreme Court. *Id.* We will instruct our clerk of court, upon issuance of this opinion, to certify a copy to the Attorney General. Should the Attorney General conclude that intervention is called for, we will entertain a petition for rehearing on behalf of the United States. The Attorney General shall have sixty days in which to file such a petition. *See also Jones v. City of Lubbock*, 727 F.2d 364, 372 (5th Cir.1984); *cf. Bridges v. Phillips Petroleum Co.*, 733 F.2d 1153, 1156 n. 7 (5th Cir.1984) (adopting same procedure where district court failed to follow 28 U.S.C. § 2403(b), which permits state attorney general to intervene where state statute's constitutionality is questioned), *cert. denied*, 469 U.S. 1163, 105 S.Ct. 921, 83 L.Ed.2d 933 (1985).

plication of the principles of *res judicata.* Notably, the district court's order makes no reference to *res judicata.* Nonetheless, the plaintiffs contend that the right to attorney's fees created by the HCPA creates a new "claim" or "cause of action" for attorney's fees distinct from that adjudicated by the district court in 1985. This argument is based on the concept that "changed circumstances" may sometimes alter the preclusive effect of a prior judgment. As Professor Moore has explained,

> Sometimes a statutory change or constitutional amendment creates a new cause of action or a new procedure for enforcing a right, or authorizes an additional means of executing a judgment, and to that extent diminishes the conclusive effect of a prior judgment or decree. Whether or not a particular statute makes the conclusive effect of prior judgments inapplicable to later suits depends on legislative intent.

1B *Moore's Federal Practice* ¶ 0.415 at 511 (1984). What appears to unite the cases decided under this rule, as well as those in which other "changed circumstances" are said to alter the preclusive effect of a judgment, is the notion that "no judgment can affect *subsequently* arising rights and duties." *Id.* ¶ 0.415 at 508 (emphasis added).[4] It is clear, however, that this case does not present "changed circumstances," as this term is commonly understood. To illustrate, we note that the plaintiffs have mischaracterized their purported right to attorney's fees under the HCPA as one involving a new "cause of action." Strictly speaking, the HCPA does not create a "cause of action" or a substantively independent "claim" for attorney's fees. Like many similar statutes, *see, e.g.,* 42 U.S.C. § 1988, it merely confers upon district

courts the discretionary power to award attorney's fees to prevailing litigants.

Congress does have clear power to create new legal rights and duties, even when imposed upon conditions that are "bred in the past." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16–18, 96 S.Ct. 2882, 2892–93, 49 L.Ed.2d 752 (1976). Pursuant to this power, Congress may create an obligation to pay attorney's fees for services rendered in the past, while a case is on direct review. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). But Congress' power to create new causes of action, new legal rights, or impose previously unrecognized duties, does not permit it to disturb a right that vests as the result of a judgment.

The well established exceptions to this rule are inapplicable to this case. The first such exception arises where Congress chooses to "waive the *res judicata* of a prior judgment entered in the [United States'] favor on a claim against the United States." *United States v. Sioux Nation of Indians,* 448 U.S. 371, 397, 100 S.Ct. 2716, 2731, 65 L.Ed.2d 844 (1980). *See also Cherokee Nation v. United States,* 270 U.S. 476, 46 S.Ct. 428, 70 L.Ed. 694 (1926). It is one thing for Congress to waive the preclusive effect of a judgment that the United States is without a certain obligation. It would be another were Congress to purportedly waive the effect of a judgment in favor of individuals, in this case local and state school authorities. In the former situation, there is no constitutional impediment because Congress is acting within the scope of powers conferred upon it by the Constitution. Congress has a broad power to "define and to 'pay the

---

**4.** Thus, to use Professor Moore's examples, a judgment reversing on constitutional grounds a decree that confirmed a plan of composition in Bankruptcy, did not bar a subsequent proceeding for confirmation of an identical plan of composition, under a newly acted Bankruptcy code provision, because the new provision created a new cause of action "that could not have been adjudicated in the prior suit." 1B *Moore's Federal Practice* ¶ 0.415 at 510 (1984) (citing *West Coast Life Ins. Co. v. Merced Irrigation District,* 114 F.2d 654 (9th Cir.1940), *cert. de-*

*nied,* 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed.2d 467 (1941)). Similarly, a judgment dismissing an alien's suit for declaratory judgment on the ground that an exclusion order was reviewable only by a writ of habeas corpus did not bar a later suit, "for identical relief on the same facts brought after the enactment of a statute creating a right to declaratory relief." *Id.* ¶ 0.415 at 510–11 (citing *Shung v. Brownell,* 227 F.2d 40 (D.C.Cir.1955), *aff'd* 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956)).

Debts ... of the United States.'" *Sioux Nation,* 448 U.S. at 397, 100 S.Ct. at 2731 (quoting U.S. Const. art. I, § 8, cl. 1); *see also Pope v. United States,* 323 U.S. 1, 9–10, 65 S.Ct. 16, 21, 89 L.Ed. 3 (1944).

The second exception to the rule regarding rights which vest as a result of a judgment arose out of the *Wheeling Bridge* cases. These cases concerned the competing efforts by Pennsylvania and Virginia to have the Cumberland Road—a major highway of the day—built inside their territories at the point where it crossed the Ohio River. In 1847, the Virginia legislature chartered a corporation to build a bridge across the river. In the first *Wheeling Bridge* case, 54 U.S. (13 How.) 518, 14 L.Ed. 249 (1852) (*Wheeling Bridge I*), Pennsylvania sued to have the bridge's construction enjoined. After the case was argued, the bridge already having been completed, the Court held that the bridge impermissibly obstructed interstate navigation and ordered it raised to a certain height. Virginia sought assistance from Congress and in a rider to a post office appropriation bill, Congress declared the bridge to be a lawful structure and a designated post road. After the bridge collapsed in 1854, Pennsylvania sued to enjoin its reconstruction.[5] In the second *Wheeling Bridge* case, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855) (*Wheeling Bridge II*), the Supreme Court held that it was within Congress' power to legalize the bridge retroactively, in spite of the Court's earlier decree ordering that the bridge be raised.

The Court accepted the principle articulated in *McCullough:* "that [an] Act of Congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby in favor of [one of the parties]." *Id.* at 431, 15 L.Ed. at 437. This class of cases was distinguishable, the Court held, because they concern "private" rather than "public" rights, such as the "right of navigation," which are "secured by Acts of Congress." *Id.* Thus the Court's *Wheeling Bridge I* decree was vulnerable to ret-

roactive legislation, but "only to the extent that the remedy chosen—an injunctive decree rather than damages at law—directly affected public rights." *Daylo,* 501 F.2d at 817. Had a party sued successfully for damages resulting from the obstruction posed by the bridge, a private right would have vested, and this right "would have passed beyond the reach of the power of congress." *Wheeling Bridge II,* 59 U.S. at 431–32. 15 L.Ed. at 437. Accordingly, even though Congress could effectively overturn the result in the first case, the award of costs made to the State of Pennsylvania was not to be disturbed. *Id.* at 436, 15 L.Ed. at 439. *See also Hodges v. Snyder,* 261 U.S. 600, 603–04, 43 S.Ct. 435, 436–37, 67 L.Ed. 819 (1923) (drawing public/private rights distinction; judgment for costs left undisturbed).

This case does not concern a public right over which Congress has unfettered control nor one which was the subject of an equitable decree. Like an award of damages, or an award of costs, the right to receive—and conversely, the right not to pay—attorney's fees is, in the parlance of these cases, a private right not subject to divestiture by retroactive legislation.

One other court of appeals has faced the question whether the HCPA's retroactivity provision impermissibly disturbed vested rights. The underlying merits of *Tonya K. v. Board of Education of City of Chicago,* 847 F.2d 1243 (7th Cir.1988) were settled by the parties and the district court entered a consent judgment providing, *inter alia,* that the issue of attorney's fees was reserved pending the Supreme Court's decision in *Smith.* Recognizing that *Smith* "doomed" their request for attorney's fees, the plaintiffs withdrew their request. No judgment was entered with respect to attorney's fees nor was the consent decree modified after the request was withdrawn. After the enactment of the HCPA, the plaintiffs filed a motion under Fed.R.Civ.P. 60(b)(6), requesting that the district court reinstate their request for fees. Although

---

**5.** For the complete history behind the cases, see C. Swisher, 5 *History of Supreme Court of the*

*United States* 408–20 (1974).

the district court acknowledged it was an extraordinary form of relief, it opened the judgment and made an award of attorney's fees.

The defendants attacked the award on a number of grounds, including the one we are presently considering. The Seventh Circuit held that because there had never been a "judicial disposition of the request for fees," the defendants had no vested right to be free from the payment of attorney's fees. 847 F.2d at 1248. The court indicated, however, that a different result would have obtained if, as is the case here, the plaintiffs had pushed their request to judgment. *See id.* ("If the plaintiffs had pressed their claim in July 1984 and lost, we would have a harder problem.").

Congress has broad powers to supply, amend, or extinguish the great body of substantive rules applied by the courts. When it so intends, its ability to affect the content of a nonfinal judgment in a civil case, through retroactive legislation ceases only when a case's journey through the courts comes to an end. As the Supreme Court explained in *United States v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801),

> If subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied.... [T]he court must decide according to existing laws, and if it be necessary to set aside the judgment, rightful when rendered, but which cannot be affirmed, in violation of law, the judgment must be affirmed.

This rule is the same regardless of whether the change in law is statutory, administrative, judicial, or the result of an intervening treaty. *See de Rodulfa v. United States,* 461 F.2d 1240, 1250 n. 50 (D.C.Cir.) (listing cases), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). As this court

has said in another context, *"[u]ntil appellate rights are exhausted,* even an otherwise valid judgment may be negated by supervening legislation." *Memorial Hospital v. Heckler,* 706 F.2d 1130, 1137 (11th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

### IV.

We recognize that the result in this case works a hardship for the prevailing parents. The initial denial of attorney's fees was based on an interpretation of the EHA which Congress has acted to correct. Yet no matter how erroneous in the eyes of Congress, the Supreme Court's decision in *Smith* was absolute authority from which the district court could not stray.

The result seems particularly harsh in light of the fact that many similarly, if not identically, situated plaintiffs will be eligible for attorney's fees. Nonetheless, the plaintiffs in this case must bear some responsibility for failing to preserve any rights to attorney's fees which might have accrued under the HCPA. Once the mandate issued in *GARC III* the plaintiffs continued to press their motion for fees in the face of *Smith,* which was clear authority contrary to their request. Had they withdrawn their request for fees, like the *Tonya K.* plaintiffs, they might have later sought them pursuant to the HCPA. Such an occurrence is not without precedent in this circuit. *See Robinson v. Kimbrough,* 652 F.2d 458 (5th Cir.1981).[6]

In any event, our decision today in no way prejudices the rights of the plaintiffs to recover attorney's fees for other nonfinal proceedings that were pending on or commenced after the date of *Smith.* On May 25, 1983, for example, the plaintiffs in this case filed a petition for "Additional Relief or in the Alternative Civil Contempt" for an alleged violation of the district court's April 6, 1981 injunction. At the

---

**6.** *Robinson* was a jury discrimination case. Most of the litigation took place prior to the enactment of 42 U.S.C. § 1988 in 1976. After the underlying merits were resolved by our court, *Robinson v. Kimbrough,* 558 F.2d 773 (5th Cir.1977) (in banc), the plaintiffs filed a motion

in the district court for section 1988 fees. We held that such a motion was proper because "at no time [had] any court address[ed] the merits of the plaintiff's claim for attorneys' fees." 652 F.2d at 463.

time the record in this case was transmitted to our court, this request for relief was still pending. Inasmuch as this petition is "a proceeding[ ] brought under section 615 of the [EHA]," the plaintiffs, should they prevail, can request attorney's fees under the HCPA for the legal work associated with this petition. The district court's August 19, 1985 order did not relieve the defendants from any liability for fees resulting from proceedings not comprehended in that order.

The judgment of the district court is AFFIRMED.[7]

---

7. Given our disposition of this case, we have no occasion to reach the other issues reached by the district court and argued by the parties.