AXEL JOHNSON INC.,
Plaintiff–Appellee,

v.

ARTHUR ANDERSEN & CO.,
Defendant–Appellant.

United States of America, Intervenor.

No. 346, Docket 92–7624.

United States Court of Appeals,
Second Circuit.

Argued Dec. 21, 1992.

Decided Sept. 27, 1993.

Sanford P. Dumain, New York City (Melvyn I. Weiss, Deborah Clark–Weintraub, Milberg Weiss Bershad Specthrie & Lerach, of counsel), for plaintiff-appellee.

Eliot Lauer, New York City (Bernard V. Preziosi, Jr., Peter Sullivan, Curtis, Mallet–Prevost, Colt & Mosle, of counsel), for defendant-appellant.

Kay K. Gardiner, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Gabriel W. Gorenstein, Asst. U.S. Atty., Barbara Biddle, Scott R. McIntosh, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., of counsel), filed brief for the U.S. as intervenor and the S.E.C. as amicus curiae in support of appellee.

Theodore B. Olson, Washington, DC (Theodore J. Boutros, Jr., John K. Bush, Gibson, Dunn & Crutcher, of counsel), filed a brief amicus curiae on behalf of Deloitte & Touche, Ernst & Young, and KPMG Peat Marwick.

Before: PIERCE, ALTIMARI, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

This appeal presents a challenge to the constitutionality of Section 27A of the Securities and Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78aa–1, as applied to reinstate plaintiff-appellee Axel Johnson Inc.'s ("Johnson") claims under § 10(b) of the Act, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5 against defendant-appellant Arthur Andersen & Co. ("Andersen"), which had been dismissed as untimely under the regime of *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

## BACKGROUND

In a complaint filed in the United States District Court for the Southern District of New York (Lasker, *J.*) on September 29, 1989, Johnson asserted against Andersen § 10(b)/Rule 10b–5 claims, as well as pendent state law claims, related to Andersen's audit of a company Johnson purchased in December of 1982. Under the § 10(b)/Rule 10b–5 statute of limitations doctrine applicable in the Second Circuit when it filed its complaint, which borrowed state-law-fraud limitations periods, *see Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 352–53 (2d Cir.1990), Johnson's federal claims were timely.

On November 8, 1990, in *Ceres,* the Second Circuit adopted a uniform federal statute of limitations period for § 10(b)/Rule 10b–5 claims, requiring suit to be filed within one year of discovery of the violation and not more than three years after accrual of the violation. Under the rule announced in *Ceres,* Johnson's § 10(b)/Rule 10b–5 claims would be untimely. Andersen moved to dismiss these claims alleging, *inter alia,* that they were barred by the statute of limitations. On April 30, 1991, following the reasoning of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and of our decision in *Welch v. Cadre Capital,* 923 F.2d 989, 995 (2d Cir.) (*"Welch I "*), *vacated and remanded sub nom. Northwest Sav. Bank PaSA v. Welch,* —— U.S. ——, 111 S.Ct. 2882, 115 L.Ed.2d 1048, *opinion after remand, Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991) (*"Welch II "*), Judge Lasker refused to apply *Ceres* retroactively to Johnson's federal claims, and denied Andersen's motion.

On June 20, 1991, in *Lampf,* the Supreme Court also adopted a uniform federal one-year/three-year statute of limitations for § 10(b)/Rule 10b–5 claims. *See* —— U.S. at ——, 111 S.Ct. at 2781. On the same day, in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991), the Supreme Court held that where a court announces a new rule and applies it to the litigants before it, the new rule must also be applied to all pending and future cases. In *Welch II,* we held that *Beam* required application of the new uniform limitations period to all claims pending or filed after *Ceres* was handed down. *See* 946 F.2d at 187–88; *see also Henley v. Slone,* 961 F.2d 23, 26 (2d Cir.1992). Following *Beam* and *Welch II,* on October 11, 1991, Judge Lasker filed a memorandum opinion dismissing Johnson's federal claims as untimely and dismissing Johnson's pendent state law claims, and entered judgment for Andersen. The clerk of the court entered a record of the decision in the civil docket sheet, but did not file a separate judgment in the case. Johnson has not appealed the district court's judgment.

After the complaint was dismissed, Congress passed § 27A as an amendment to the Act. The purpose of § 27A is to preserve the § 10(b)/Rule 10b–5 claims of certain plaintiffs which had been or would be dismissed as untimely under the regime of *Lampf* and *Beam.* Subsection (a) of § 27A directs that the pre-*Lampf* statute of limitation rules (including rules of retroactivity) of the various circuits apply to cases pending on or before June 19, 1991, the day before *Lampf* and *Beam* were decided. Subsection (b) revives certain claims dismissed after *Lampf* and *Beam* were handed down that would have been timely under prior circuit court doctrines.[1]

---

1. Section 27A provides:
   (a) **Effect on pending causes of action.**
   The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
   (b) **Effect on dismissed causes of action.**
   Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991—

   (1) which was dismissed as time barred subsequent to June 19, 1991, and
   (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991,
   shall be reinstated on motion by the plaintiff not later than 60 days after Dec. 19, 1991.
   15 U.S.C. § 78aa–1 (Supp. IV 1992).

On December 24, 1991—more than thirty days after the court entered judgment against it—Johnson moved under Fed. R.Civ.P. 60(b)(6) for an order vacating the October 11, 1991 judgment and reinstating the complaint. On April 25, 1992, the district court granted the motion, 790 F.Supp. 476, and, on May 7, 1992, granted Andersen's motion for certification of an immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). On June 9, 1992, this court granted Andersen permission to appeal.

## DISCUSSION

Andersen challenges the constitutionality of both subsections of § 27A as applied in this case. First, Andersen challenges § 27A(a)'s selective extension of the limitations period for certain § 10(b)/Rule 10b–5 claims. Second, Andersen challenges the district court's reinstatement of Johnson's previously dismissed claims pursuant to § 27A(b). We find Andersen's challenges to be without merit.

*Constitutionality of § 27A*

A. *Section 27A(a)*

■ Andersen contends that § 27A(a) violates the separation of powers through legislative usurpation of judicial powers. According to Andersen, § 27A(a) does not change the statute of limitations "law" of § 10(b)/Rule 10b–5, but rather directs the courts to apply a particular rule of decision to a limited class of § 10(b)/Rule 10b–5 cases without altering the statute of limitations applicable to those cases. We disagree and hold, along with all of our sister circuits that have considered the issue, that § 27A(a) constitutes a valid change in law, rather than an improper act of congressional adjudication. *See Cooke v. Manufactured Homes, Inc.,* 998 F.2d 1256 (4th Cir.1993); *Cooperativa de Ahorro y Credito Aguada v. Kidder Peabody & Co.,* 993 F.2d 269, 273 & n. 11 (1st Cir. 1993); *Berning v. A.G. Edwards & Sons, Inc.,* 990 F.2d 272, 278–79 (7th Cir.1993); *Gray v. First Winthrop Corp.,* 989 F.2d 1564, 1569 (9th Cir.1993); *Anixter v. Home–Stake Prod. Co.,* 977 F.2d 1533, 1547 (10th Cir.), *reh'g granted in part,* 977 F.2d 1549 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993); *Henderson v. Scientific–Atlanta, Inc.,* 971 F.2d 1567, 1575 (11th Cir.1992), *petition for cert. filed,* No. 92–2061 (June 25, 1993); *see also Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 967 F.2d 742, 751 n. 6 (2d Cir.1992) (noting in dictum probable constitutionality of § 27A).

The conceptual line between a valid legislative change in law and an invalid legislative act of adjudication is often difficult to draw. The leading case of *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), concerned a claim for the proceeds of the sale of properties seized by the Federal Government from a Confederate sympathizer ("Klein"). Klein's administrator brought suit in the Court of Claims under a statute providing for recovery of such proceeds by persons innocent of charges of disloyalty. Klein had received a pardon for offenses arising from his actions during the Civil War. Relying upon an earlier Supreme Court decision holding that such pardons constitute proof of loyalty for purposes of the statute at issue, *see United States v. Padelford,* 76 U.S. (9 Wall.) 531, 19 L.Ed. 788 (1870), the administrator prevailed in the Court of Claims. But while the Government's appeal was pending before the Supreme Court, Congress passed a statute that not only purported to divest the courts of jurisdiction over cases involving property claims against the United States in which pardons had been offered as proof of loyalty, but also required courts to treat such pardons as conclusive evidence of disloyalty. The Court held, *inter alia,* that the statute violated the separation of powers because it prescribed a rule of decision to the courts. *See Klein,* 80 U.S. at 146.

■ The rule of *Klein* precludes Congress from usurping the adjudicative function assigned to the federal courts under Article III. However, *Klein* does not preclude Congress from changing the law applicable to pending cases. *See Klein,* 80 U.S. at 146–47; *see also International Union of Elec., Radio & Mach. Workers AFL–CIO Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 243–44, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976); *Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 311–12 & n. 8, 65 S.Ct. 1137, 1140–41 & n. 8, 89 L.Ed. 1628 (1945); *United States v.*

*Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). In *Robertson v. Seattle Audubon Soc'y,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the Supreme Court rejected a constitutional challenge to a bill known as the Northwestern Timber Compromise (the "Compromise"), passed by Congress to resolve two suits challenging the logging of certain old-growth forests in the Pacific Northwest under federal environmental laws. The Compromise stated that logging in accordance with certain provisions of the Compromise would satisfy the requirements of the environmental statutes at issue in the two cases, which the Compromise identified. The Supreme Court rejected a separation of powers challenge to the Compromise, holding that it "compelled changes in law, not findings or results under old law." *Id.* —— U.S. at ——, 112 S.Ct. at 1413. Congress' identification of the limited class of cases affected by the Compromise did not alter the constitutional analysis because, to the extent that the Compromise affected the adjudication of the pending cases, it did so by changing the statutory provisions at issue. *See id.* —— U.S. at ——, 112 S.Ct. at 1414; *see also United States v. Sioux Nation of Indians,* 448 U.S. 371, 405, 100 S.Ct. 2716, 2735, 65 L.Ed.2d 844 (1980) (Congressional withdrawal of United States' *res judicata* defense to permit adjudication of claim on the merits did not interfere with adjudicatory function of courts because "Congress made no effort ... to control the Court of Claims' ultimate decision of that claim.").

Our result in this case follows *a fortiori* from the Court's holding in *Robertson.* Like the Compromise, § 27A(a) constitutes a change in law applicable to a limited class of cases. Prior to the enactment of § 27A(a), under the rules of *Lampf* and *Beam,* all § 10(b)/Rule 10b–5 claims were subject to the one-year/three-year statute of limitations period. Section 27A(a) changed this rule of law by establishing a different limitations period for certain § 10(b)/Rule 10b–5 cases filed on or before June 19, 1991. The fact that the new limitations period is defined by the statute of limitations and retroactivity doctrines of the various circuits before *Lampf* was handed down, rather than being set forth explicitly in the body of the statute,

is not of constitutional significance. Nor is it significant to our separation of powers analysis that § 27A(a) changed the law for only a limited class of cases, given that the change in law at issue in *Robertson* was limited to only two identified cases.

Finally, unlike the provision at issue in *Klein,* and like the statute at issue in *Robertson,* § 27A(a) does not directly interfere with judicial fact finding. For example, the statute does not control courts' determinations with respect to whether particular cases satisfy the requisites set forth in § 27A(a) for avoiding application of the rule of *Lampf.* Section 27A leaves to the courts the task of determining whether a claim falls within the ambit of the statute.

■ Andersen proffers a second separation of powers challenge to § 27A(a) that "Congress stepped outside its constitutional role and assumed the judicial function of determining the retroactive effect of judicial precedent," contravening the retroactivity rule of *Beam.* This argument is grounded in the same flawed presupposition that underlies Andersen's first argument: that § 27A entails legislative adjudication rather than a change in the statute of limitations law of § 10(b)/Rule 10b–5. Rather than directing courts not to give retroactive effect to the rule of *Lampf* in contravention of the rule of *Beam,* § 27A simply takes a limited class of cases outside of the reach of *Lampf*'s construction of § 10(b)/Rule 10b–5, directing application of a separate and distinct statute of limitations rule to those claims. Given our conclusion that § 27A does not involve an intrusion upon the retroactivity principle announced in *Beam,* we need not reach Andersen's further contention that *Beam* was a constitutionally based decision, and thus was not open to congressional modification. *See generally Harper v. Virginia Dep't of Taxation,* —— U.S. ——, ——–——, 113 S.Ct. 2510, 2517–18, 125 L.Ed.2d 74 (1993) (dictum stating that courts have " 'no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently' " (quoting *American Trucking Ass'ns, Inc. v. Smith,* 496 U.S. 167, 214, 110 S.Ct. 2323,

2350, 110 L.Ed.2d 148 (1990) (Stevens, J., dissenting))).

### B. *Section 27A(b)*

■ Andersen contends that the district court violated both the separation of powers and its Fifth Amendment rights in reinstating Johnson's claims after they had passed into final judgment. *See Plaut v. Spendthrift Farm, Inc.,* 1 F.3d 1487 (6th Cir.1993) (holding that § 27A(b) violates separation of powers principles by interfering with final federal court judgments); *but see Pacific Mut. Life Ins. Co. v. First Republicbank Corp.,* 997 F.2d 39 (5th Cir.1993) (rejecting a similar constitutional challenge to § 27A(b)). Because the claims at issue had not passed into final judgment within the constitutional definition of that term at the time that Judge Lasker reinstated Johnson's complaint, Andersen's challenge to the application of § 27A(b) fails.

Andersen's argument is grounded upon the so-called vested rights doctrine. *See McCullough v. Virginia,* 172 U.S. 102, 19 S.Ct. 134, 43 L.Ed. 382 (1898); *see also Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792). In *McCullough,* a taxpayer prevailed in a suit against the State of Virginia, obtaining a judgment awarding him a tax refund. Before the judgment was executed, the Virginia legislature attempted to prevent the taxpayer from recovering by repealing the legislation entitling him to a refund. The Supreme Court held that the Constitution barred the legislature from repudiating the judgment, stating:

> It is not within the power of the legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*Id.* 172 U.S. at 123–24, 19 S.Ct. at 142. Although *McCullough* is one of the few Supreme Court decisions finding a constitutional bar to the legislative nullification of a judgment, several subsequent decisions have restated the principle set forth in that case. *See, e.g., Chase Sec.,* 325 U.S. at 310, 65 S.Ct.

at 1140 (upholding retroactive change in statute of limitations in case where defendant's statutory immunity from suit had not been fully adjudged); *Hodges v. Snyder,* 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923) ("the private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation"); *see also Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 437, 15 L.Ed. 435 (1852) ("[E]specially as it respects adjudication upon the private rights of parties", an "act of Congress cannot have the effect and operation to annul the judgment of the court already rendered, or the rights determined thereby.... When they have passed into judgment the right[s] become[ ] absolute, and it is the duty of the court to enforce" them.).

■ The "vested rights" doctrine has a due process component, grounded upon a recognition "that rights fixed by judgment are, in essence, a form of property over which legislatures have no greater power than any other [property]." *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 805, 810 (11th Cir.1988) (emphasis omitted), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *see Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.,* 960 F.2d 1339, 1345 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992); *Max M. v. New Trier High Sch. Dist. No. 203,* 859 F.2d 1297, 1299 (7th Cir.1988); *Tonya K. by Diane K. v. Board of Educ.,* 847 F.2d 1243, 1247–48 (7th Cir.1988); *Treiber v. Katz,* 796 F.Supp. 1054, 1060–61 (E.D.Mich. 1992). Apart from protecting the property interests of prevailing parties, in cases involving congressional interference with federal court judgments, the vested rights doctrine has a separation of powers component which limits congressional review of judicial actions. *See, e.g., Georgia Ass'n,* 855 F.2d at 810 (doctrine "protects judicial action from superior legislative review"); *Tonya K.,* 847 F.2d at 1247 ("once a court has disposed of a case, Congress may not dictate a different decision"); *Daylo v. Administrator of Veter-*

*ans' Affairs,* 501 F.2d 811, 816 (D.C.Cir.1974) (doctrine protects "constitutional independence" of judicial branch); *Treiber,* 796 F.Supp. at 1060 (same); *see also Central States,* 960 F.2d at 1345 (noting that Congress might be unable to overturn final judgments without "invad[ing] the judicial power of the United States, which Article III of the Constitution confides to the federal courts exclusively").

■ However, not all judgments that are final for purposes of *res judicata* are final for Fifth Amendment and separation of powers purposes. Rather, a case remains "pending," and open to legislative alteration, so long as an appeal is pending or the time for filing an appeal has yet to lapse. *See, e.g., Georgia Ass'n,* 855 F.2d at 813 ("When it so intends, [Congress'] ability to affect the content of a nonfinal judgment in a civil case, through retroactive legislation ceases only when a case's journey through the courts comes to an end."); *Tonya K.,* 847 F.2d at 1247 ("The legislature may change a statute of limitations at the last instant, extending or abrogating the remedy for an established wrong."); *see also Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987) (judgment is "final" only after "the availability of appeal [is] exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari [has been] finally denied"). Thus, "if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed...." *Schooner Peggy,* 5 U.S. (1 Cranch) at 110.

Johnson did not file a notice of appeal following the district court's dismissal of its complaint; however, it argues that it had a right to appeal the dismissal as of the date Judge Lasker granted its Rule 60(b)(6) motion under the terms of Fed.R.App.P. 4(a)(6). We agree, and thus conclude that the judgment at issue here was not constitutionally "final" when it was vacated by Judge Lasker.

■ Rule 4 provides that parties may serve a notice of appeal within 30 days following the entry of final judgment "entered in compliance with" Fed.R.Civ.P. 58 and 79(a). Fed.R.App.P. 4(a)(1), (7). Rule 79(a) requires the clerk of the court to record a judgment or order in the civil docket sheet. Rule 58 states that "[e]very judgment shall be set forth on a separate document ... [and] is effective only when so set forth...." The separate document rule is designed to reduce uncertainty for the litigants with respect to the date of final disposition of a case. Fed.R.Civ.P. 79(a). *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 386, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam); *RR Village Ass'n, Inc. v. Denver Sewer Corp.,* 826 F.2d 1197, 1200 (2d Cir.1987); *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2781, at 6 (1973) ("Rule 58 is intended to resolve [the question of] 'when is a judgment a judgment.'" (citation omitted)). Our cases require that the document granting judgment be separate from any judicial memorandum or opinion. *See RR Village Ass'n,* 826 F.2d at 1200–01; *Kanematsu–Gosho, Ltd. v. M/T Messiniaki Aigli,* 805 F.2d 47, 48–49 (2d Cir.1986). In *Kanematsu–Gosho,* we stated that the separate document must be labeled a "judgment." 805 F.2d at 49. *But see* 11 C. Wright & A. Miller, *supra,* § 2785, at 15 (1973) ("[n]o particular form of words is required in a judgment").

In the case at bar, the district court filed a two page memorandum decision, denominated as an order, setting forth its judgment in the case. In compliance with Rule 79(a), the clerk of the court made an entry in the docket sheet indicating that the case had been dismissed. However, the clerk did not file a separate document denominated as a judgment. Although the district court did render an order which it intended "to represent the final decision in the case," *Kanematsu–Gosho,* 805 F.2d at 49 (citation omitted), due to the clerk's failure to comply with Rule 58, the time for appeal of Judge Lasker's judgment never began to run under the terms of Rule 4. Thus, the judgment was not constitutionally "final."

■ We note finally in passing that Johnson should have brought its motion for reinstatement under § 27A(b) itself rather than Rule 60(b)(6). The Rule grants district courts discretion to relieve a party from a

final judgment "when 'appropriate to accomplish justice....'" *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986) (citation omitted), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). Unlike Rule 60(b)(6), § 27A(b) is mandatory, requiring a court to reinstate a dismissed cause of action satisfying the statutory requisites. *See* 15 U.S.C. § 78aa–1 (stating that dismissed action "shall be reinstated on motion by the plaintiff"). We are thus convinced that motions for reinstatement under § 27A(b) should be brought under the statute itself, rather than under the discretionary mechanism of Rule 60(b)(6). *See Cooperativa de Ahorro,* 993 F.2d at 272 & n. 7 (stating the Fed.R.Civ.P. 12(b) standard, rather than 60(b) standard, applies to motion for reinstatement pursuant to 27A(b)).

## CONCLUSION

The order of the district court is affirmed.