**13-2952-cv**
*Peterson v. Islamic Republic of Iran*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: MAY 19, 2014
DECIDED: JULY 9, 2014

No. 13-2952-cv

DEBORAH D. PETERSON, *et al.*,
*Plaintiffs-Appellees,*

*v.*

ISLAMIC REPUBLIC OF IRAN, *et al.*,
*Defendants-Appellants.**

————

Appeal from the United States District Court
for the Southern District of New York.
No. 10 Civ. 4518 – Katherine B. Forrest, *Judge.*

————

Before: WINTER, WALKER, and CABRANES, *Circuit Judges.*

————

---

\* Consistent with the order entered by this Court on October 18, 2013, ECF No. 118, we use the short-form caption for the purpose of publishing this opinion.

To satisfy terrorism-related judgments against Iran, the district court (Forrest, *J.*) awarded turnover of $1.75 billion in assets under both the Terrorism Risk Insurance Act of 2002 ("TRIA") and a statute enacted specifically to address the assets at issue in this case, 22 U.S.C. § 8772. Although Iran argues that the TRIA ownership requirements have not been satisfied, we need not reach this issue in light of Congress's enactment of § 8772. Iran concedes that the statutory elements for turnover of the assets under § 8772 have been satisfied, and we reject Iran's arguments that § 8772 conflicts with the Treaty of Amity between the United States and Iran, violates separation of powers, and effects an unconstitutional taking. We also conclude that the district court did not abuse its discretion in issuing an anti-suit injunction to protect its judgment. We AFFIRM.

————

JAMES P. BONNER, Stone Bonner & Rocco LLP, New York, N.Y. (Liviu Vogel, Salon Marrow Dyckman Newman & Broudy LLP, New York, N.Y.; Patrick L. Rocco, Susan M. Davies, Stone Bonner & Rocco LLP, New York, N.Y., *on the brief*), *for Plaintiffs-Appellees*.

ANDREAS A. FRISCHKNECHT (David M. Lindsey, *on the brief*), Chaffetz Lindsey LLP, New York, N.Y., *for Defendants-Appellants*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

To satisfy terrorism-related judgments against Iran, the district court (Forrest, *J.*) awarded turnover of $1.75 billion in assets under both the Terrorism Risk Insurance Act of 2002 ("TRIA") and a statute enacted specifically to address the assets at issue in this case, 22 U.S.C. § 8772. Although Iran argues that the TRIA ownership requirements have not been satisfied, we need not reach this issue in light of Congress's enactment of § 8772. Iran concedes that the statutory elements for turnover of the assets under § 8772 have been

satisfied, and we reject Iran's arguments that § 8772 conflicts with the Treaty of Amity between the United States and Iran, violates separation of powers, and effects an unconstitutional taking. We also conclude that the district court did not abuse its discretion in issuing an anti-suit injunction to protect its judgment. We AFFIRM.

## BACKGROUND

Plaintiffs-appellees are the representatives of hundreds of Americans killed in multiple Iran-sponsored terrorist attacks, and they have billions of dollars in unpaid compensatory damages judgments against Iran stemming from these attacks.[1] Defendant-appellant Bank Markazi is the Central Bank of Iran, which is wholly owned by the Iranian government. The assets at issue in this appeal are $1.75 billion in cash proceeds of government bonds, currently held in New York by defendant Citibank, N.A., in an omnibus account for defendant Clearstream Banking, S.A., a financial intermediary. One of the customers for whom Clearstream maintains this account is defendant Banca UBAE S.p.A., an Italian bank whose customer, in turn, is Bank Markazi. Bank Markazi concedes that through this chain of parties it has at least a "beneficial interest" in the assets at issue. Plaintiffs seek turnover of these assets to satisfy their judgments.

When plaintiffs first learned of Bank Markazi's interest in the assets in 2008, they obtained restraints against transfer of the assets. In 2010, plaintiffs initiated this action against Bank Markazi, UBAE, Clearstream, and Citibank to obtain turnover of the assets under section 201(a) of the TRIA, which provides that "in every case in which a person has obtained a judgment against a terrorist party . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment." Terrorism Risk Insurance Act of 2002, Pub L. No. 107-297, § 201(a), 116 Stat. 2322, 2337 (codified at

---

[1] The appellees first entered this action in various procedural postures, but they are all judgment creditors of Iran and are referred to collectively as "plaintiffs" for ease of reference.

28 U.S.C. § 1610 Note "Satisfaction of Judgments from Blocked Assets of Terrorists, Terrorist Organizations, and State Sponsors of Terrorism").

In February 2012, while this action was pending, President Obama issued Executive Order 13,599, which stated:

> [I]n light of the deceptive practices of [Bank Markazi] . . . to conceal transactions of sanctioned parties . . . . [a]ll property and interests in property of the Government of Iran, including [Bank Markazi], that are in the United States . . . or that are or hereafter come within the possession or control of any United States person . . . are blocked . . . .

Exec. Order No. 13,599, 77 Fed. Reg. 6659, 6659 (Feb. 5, 2012). The assets at issue (which were still under restraint) were blocked based on this Executive Order. Plaintiffs then filed a motion for partial summary judgment on their TRIA claim.

In August 2012, while that motion was pending, Congress passed the Iran Threat Reduction and Syria Human Rights Act of 2012. That Act included a section, codified at 22 U.S.C. § 8772, which stated that "the financial assets that are identified in and the subject of proceedings in the United States District Court for the Southern District of New York in *Peterson et al. v. Islamic Republic of Iran et al.*, Case No. 10 Civ. 4518" "shall be subject to execution . . . in order to satisfy any judgment to the extent of any compensatory damages awarded against Iran for damages for personal injury or death caused by an act of [terrorism]." Pub. L. 112-158, § 502, 126 Stat. 1214, 1258. Plaintiffs then filed a supplemental motion for summary judgment under § 8772.

In March 2013, the district court granted summary judgment to plaintiffs, ordering turnover of the assets on the two independent bases of TRIA section 201(a) and 22 U.S.C. § 8772. *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013). In July 2013, the district court issued an order directing turnover of the blocked assets and enjoining the parties from initiating a claim to the assets in another jurisdiction. *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (S.D.N.Y. July 9, 2013), ECF

No. 463. Post-judgment, plaintiffs settled with Clearstream and UBAE, and Citibank is a neutral stakeholder, leaving Bank Markazi as the sole appellant.

## DISCUSSION

"We review *de novo* a district court's grant of summary judgment, construing the evidence in the light most favorable to the non-movant, asking whether there is a genuine dispute as to any material fact and whether the movant is entitled to judgment as a matter of law." *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 81 (2d Cir. 2013) (citing Fed. R. Civ. P. 56(a)). "We [also] review *de novo* the district court's legal conclusions, including those interpreting and determining the constitutionality of a statute," *United States v. Stewart*, 590 F.3d 93, 109 (2d Cir. 2009), or involving the "interpretation of a treaty," *Swarna v. Al-Awadi*, 622 F.3d 123, 132 (2d Cir. 2010).

Bank Markazi argues that the assets at issue are not "assets of" Bank Markazi as required for turnover under TRIA section 201(a), and that even if the assets were held to be "assets of" Bank Markazi, then they would be "the property . . . of a foreign central bank . . . held for its own account" and thus "immune from attachment and from execution" under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1611(b)(1). We need not resolve this dispute under the TRIA, however, as Congress has changed the law governing this case by enacting 22 U.S.C. § 8772. Bank Markazi concedes that plaintiffs have satisfied the statutory elements of their § 8772 claim but argues that turnover under this provision (1) conflicts with the Treaty of Amity between the United States and Iran; (2) violates separation of powers under Article III; and (3) violates the Takings Clause. As we explain below, none of these arguments has merit. We also reject Bank Markazi's challenge to the district court's anti-suit injunction.

### I.    Treaty of Amity

Bank Markazi argues that turnover of the assets under § 8772 would conflict with obligations of the United States under the Treaty

of Amity, which is a self-executing treaty between the United States and Iran that was signed in 1955. Treaty of Amity, Economic Relations and Consular Rights between the United States and Iran, Aug. 15, 1955, 8 U.S.T. 899; *see also McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 488 (D.C. Cir. 2008) ("The Treaty of Amity, like other treaties of its kind, is self-executing."). But even if there were a conflict, the later-enacted § 8772 would still apply: "The Supreme Court has held explicitly that legislative acts trump treaty-made international law, stating that 'when a statute which is subsequent in time [to a treaty] is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null.'" *United States v. Yousef*, 327 F.3d 56, 110 (2d Cir. 2003) (alteration in original) (quoting *Breard v. Greene*, 523 U.S. 371, 376 (1998)); *see also Whitney v. Robertson*, 124 U.S. 190, 194 (1888) ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation . . . . [and] if the two are inconsistent, the one last in date will control the other."). Indeed, when Iran raised a similar argument against turnover under TRIA section 201(a) in a different case, we concluded that even if this provision conflicted with the Treaty of Amity, "the TRIA would have to be read to abrogate that portion of the Treaty." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 53 (2d Cir. 2010).[2]

In any event, we see no conflict between § 8772 and the Treaty of Amity. Bank Markazi first contends that Congress's inclusion of Bank Markazi in its definition of "Iran" in § 8772(d)(3) violates Article III.1 of the Treaty, which states that Iranian companies "shall have their juridical status recognized within" the United States. But as Bank Markazi acknowledges, this argument has been rejected by our Court in the context of a similar provision in the TRIA. *See Weinstein*, 609 F.3d at 53 (concluding that Iran's argument was

---

[2] Additionally, § 8772, like TRIA section 201(a), contains a broad provision stating that it applies "notwithstanding any other provision of law," 22 U.S.C. § 8772(a)(1), and "the Courts of Appeals have regularly interpreted such 'notwithstanding' provisions 'to supersede all other laws,'" *Weinstein*, 609 F.3d at 53 (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)).

foreclosed by the Supreme Court's analysis of similar provisions in *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176 (1982)).

Bank Markazi also argues that § 8772 violates Articles IV.1 and V.1, which require that treatment of Iranian companies and their property interests be "fair and equitable" and no "less favorable than that accorded nationals and companies of any third country." But the provision of § 8772 that Bank Markazi points to contains no country-based discrimination; rather, it simply states that "[n]othing in this section shall be construed . . . to affect the availability, or lack thereof, of a right to satisfy a judgment in any other action against a terrorist party in any proceedings other than [these] proceedings." 22 U.S.C. § 8772(c). Contrary to Bank Markazi's argument, this provision is expressly *non*-discriminatory.

Finally, Bank Markazi argues that turnover under § 8772 violates Article III.2, which accords Iranian companies "freedom of access to [U.S.] courts," and Article IV.2, which states that Iranian "property shall not be taken except for a public purpose" and upon "prompt payment of just compensation." As discussed below, however, § 8772 neither usurps the adjudicative role of the courts nor effects an unconstitutional taking of Bank Markazi's assets.

In sum, turnover of the blocked assets under § 8772 is entirely consistent with the United States' obligations under the Treaty of Amity. And, assuming *arguendo* that it is not, § 8772 would have to be read to abrogate any inconsistent provisions in the Treaty.

## II.    Separation of Powers

Bank Markazi next challenges § 8772 as violating the separation of powers between the legislative branch and the judiciary under Article III by compelling the courts to reach a predetermined result in this case. We conclude, however, that § 8772 does not usurp the judicial function; rather, it retroactively changes the law applicable in this case, a permissible exercise of legislative authority.

In the leading case to find a separation-of-powers violation, *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872), Congress had

passed a statute requiring courts to treat pardons of Confederate sympathizers as conclusive evidence of disloyalty, and the Supreme Court found the statute invalid for prescribing a rule of decision to the courts. But while *Klein* illustrates that Congress may not "usurp[] the adjudicative function assigned to the federal courts," later cases have explained that Congress may "chang[e] the law applicable to pending cases," even when the result under the revised law is clear. *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 81 (2d Cir. 1993).

In *Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992), Congress had passed legislation to resolve two environmental suits challenging logging in the Pacific Northwest. The result of the cases under the new law was clear: the statute stated that "Congress hereby determines and directs" that if the forests at issue were managed under the terms of the new statute, it would "meet[] the statutory requirements that are the basis for" the plaintiffs' environmental law challenges in those particular cases. 503 U.S. at 434-35 (quoting Department of the Interior and Related Agencies Appropriations Act, Pub. L. No. 101-121, § 318(b)(6)(A), 103 Stat. 701, 747 (1989)). The Ninth Circuit held this statute to be unconstitutional under *Klein* as directing a particular decision in the two cases. *Id.* at 436. But the Supreme Court rejected this position, concluding instead that "[t]o the extent that [the statute] affected the adjudication of the cases, it did so by effectively modifying the provisions at issue in those cases," not by compelling findings or results under those provisions. *Id.* at 440.

Our court rejected a similar separation-of-powers challenge to section 27A(a) of the Securities Exchange Act of 1934, which was enacted to preserve pending securities law claims that would otherwise have been dismissed as untimely. *Axel Johnson*, 6 F.3d at 80-82. We noted that, like the statute in *Robertson*, section 27A(a) does not compel findings or results under old law, but rather "constitutes a change in law applicable to a limited class of cases" that "leaves to the courts the task of determining whether a claim falls within the ambit of the statute." *Id*. at 82.

Similarly, § 8772 does not compel judicial findings under old law; rather, it changes the law applicable to this case. And like the statutes at issue in *Robertson* and *Axel Johnson*, § 8772 explicitly leaves the determination of certain facts to the courts:

> [T]he court shall determine whether Iran holds equitable title to, or the beneficial interest in, the assets [at issue] and that no other person possesses a constitutionally protected interest in the assets . . . under the Fifth Amendment to the Constitution of the United States. To the extent the court determines that a person other than Iran holds—
>
> > (A) equitable title to, or a beneficial interest in, the assets . . . (excluding a custodial interest of a foreign securities intermediary or a related intermediary that holds the assets abroad for the benefit of Iran); or
> >
> > (B) a constitutionally protected interest in the assets . . . ,
>
> such assets shall be available only for execution or attachment in aid of execution to the extent of Iran's equitable title or beneficial interest therein and to the extent such execution or attachment does not infringe upon such constitutionally protected interest.

22 U.S.C. § 8772(a)(2).

Bank Markazi argues that while § 8772(a)(2) may formally give discretion to the courts, it effectively compels only one possible outcome, as Iran's beneficial interest in the assets had been established by the time Congress enacted § 8772. But this argument is foreclosed by the Supreme Court's decision in *Robertson*, as the statute there was specifically enacted to resolve two pending cases, and the Supreme Court found no constitutional violation. Indeed, it would be unusual for there to be more than one likely outcome when Congress changes the law for a pending case with a developed factual record.

As we have noted, "[t]he conceptual line between a valid legislative change in law and an invalid legislative act of adjudication is often difficult to draw," *Axel Johnson*, 6 F.3d at 81,

and there may be little functional difference between § 8772 and a hypothetical statute directing the courts to find that the assets at issue in this case are subject to attachment under existing law, which might raise more concerns. But we think it is clear that under the Supreme Court's guidance in *Robertson*, § 8772 does not cross the constitutional line.

## III. Takings Clause

Bank Markazi's final challenge to § 8772 is that it effects an unconstitutional taking. *See* U.S. Const., amend. V ("[N]or shall private property be taken for public use, without just compensation."). As we have already stated in a similar case against another Iranian bank, however, "where the underlying judgment against Iran has not been challenged, seizure of [the bank's] property, as an instrumentality of Iran, in satisfaction of that liability does not constitute a 'taking' under the Takings Clause." *Weinstein*, 609 F.3d at 54.

Bank Markazi argues that this case raises retroactivity concerns that were not present in *Weinstein* because § 8772 was enacted after the assets were first restrained. But this is not a case in which legislation "imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability." *E. Enters. v. Apfel*, 524 U.S. 498, 528-29 (1998) (plurality opinion). Iran—the 100% owner of Bank Markazi—had already been found liable to plaintiffs for billions of dollars in uncontested judgments, and § 8772 simply helps plaintiffs reach Iranian assets in partial satisfaction of these judgments. "Here, where Bank [Markazi's] assets are subject to attachment to satisfy a judgment against its foreign sovereign, the underlying purpose of the Takings Clause is in no way violated by attachment of Bank [Markazi's] assets." *Weinstein*, 609 F.3d at 54.

## IV. Anti-Suit Injunction

Bank Markazi's final argument on appeal challenges the district court's order that it "shall be permanently restrained and enjoined from instituting or prosecuting any claim or pursuing any actions against Clearstream in any jurisdiction or tribunal arising

from or relating to any claim (whether legal or equitable) to the Blocked Assets." *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, slip op. at 12 (S.D.N.Y. July 9, 2013), ECF No. 463. Bank Markazi argues that the district court lacked jurisdiction to issue this impermissible restraint on its property outside the United States.

As this court has explained, however, "federal courts . . . have inherent power to protect their own judgments from being undermined or vitiated by vexatious litigation in other jurisdictions." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 124 (2d Cir. 2007) (emphasis omitted). "The standard of review for the grant of a permanent injunction, including an anti-suit injunction, is abuse of discretion." *Id.* at 118-19. We see no abuse of discretion here, especially as Bank Markazi expressly consented to this language in the district court. At the hearing on this order, Bank Markazi's counsel objected to the anti-suit injunction as overly broad, the district court modified the language in response to this objection, and Bank Markazi's counsel then expressly stated, "That's fine with us as well, your Honor." Transcript of Conference at 24, *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518 (S.D.N.Y. July 9, 2013), ECF No. 466. Because this issue does not involve jurisdictional concerns, Bank Markazi has no basis to now object to this injunction on appeal. *See Kraebel v. N.Y. City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 401 (2d Cir. 1992) ("We have repeatedly held that if an argument has not been raised before the district court, we will not consider it.").

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.