16-2615
Zheng v. Sessions

BIA
Christensen, IJ
A200 914 877

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of May, two thousand eighteen.

PRESENT:
RALPH K. WINTER,
GUIDO CALABRESI,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

CHANGJING ZHENG,
*Petitioner,*

v.                                          16-2615
                                            NAC
JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,
*Respondent.*

_____

FOR PETITIONER:        Thomas V. Massucci, New York, NY.

FOR RESPONDENT:        Chad A. Readler, Acting Assistant
                       Attorney General; Melissa Neiman-
                       Kelting, Assistant Director;
                       Christopher Buchanan, Trial
                       Attorney, Office of Immigration
                       Litigation, United States
                       Department of Justice, Washington,
                       DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Changjing Zheng, a native and citizen of the People's Republic of China, seeks review of a July 12, 2016, decision of the BIA affirming a January 28, 2015, decision of an Immigration Judge ("IJ") denying Zheng's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Changjing Zheng,* No. A200 914 877 (B.I.A. July 12, 2016), *aff'g* No. A200 914 877 (Immig. Ct. N.Y. City Jan. 28, 2015). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we review the IJ's decision as modified by the BIA (*i.e.*, excluding the alternative burden findings, which the BIA declined to reach). *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165-66 (2d Cir. 2008).

2

The governing REAL ID Act credibility standard provides that the agency must "[c]onsider[] the totality of the circumstances," and may base a credibility finding on an applicant's "demeanor, candor, or responsiveness, . . . [the] plausibility" of his account, and inconsistencies or omissions in his or his witness's statements, "without regard to whether" they go "to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 163-64, 166-67.  "[E]ven where an IJ relies on discrepancies or lacunae that, if taken separately, concern matters collateral or ancillary to the claim, the cumulative effect may nevertheless be deemed consequential by the fact-finder."  *Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006) (internal quotation marks and citation omitted).  However, "where the perceived incongruities in an asylum applicant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them."  *Ming Shi Xue v. BIA*, 439 F.3d 111, 121 (2d Cir. 2006).  A "contradiction is obvious . . . where the relevant inconsistency is sufficiently

3

conspicuous as to be evident, and where it is central enough to the applicant's claim that it could not have been reasonably overlooked by the parties or the IJ . . . ." *Id.* at 120. "[C]ontradictions . . . are *not* obvious . . . where they are not premised on 'dramatically different' accounts of the alleged persecution." *Id.* at 121.

As an initial matter, although our jurisdiction to review the agency's pretermission of asylum on timeliness grounds is limited to "constitutional claims or questions of law," 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D), Zheng's argument that the IJ failed to solicit explanations for the inconsistencies and omissions underlying the credibility determination raises a question of law, *see Ming Shi Xue*, 439 F.3d at 119. We therefore have jurisdiction to review Zheng's argument in the context of both the credibility-based pretermission of asylum and the credibility-based denial of withholding of removal and CAT relief. Neither this Court nor the agency has explicitly addressed the question raised by the discrepancies between Zheng's and his witnesses' testimony—how, if at all, does an IJ's obligation to confront an applicant with putative

4

inconsistencies change when those inconsistencies arise from subsequent witness testimony. Although this case presents a close question, for the reasons that follow, we conclude that the discrepancies were not sufficiently dramatic as to fall outside the universe of discrepancies for which explanations should be sought. On remand, the agency is directed to address the IJ's responsibility to solicit explanations for putative inconsistencies arising from subsequent witness testimony, particularly where, as here, the applicant was represented by counsel.

First, the IJ erred in making its credibility determination by relying on the inconsistencies between Zheng and his one-year witness's testimony without first confronting Zheng with the inconsistencies; the finding was "not premised on 'dramatically different' accounts of the alleged persecution." *Ming Shi Xue*, 439 F.3d at 121. Indeed, the IJ acknowledged that these discrepancies did not go to the heart of Zheng's claim. Zheng testified that he attended the one-year witness's grandmother's funeral in China in August 2009; that there was a 500-person banquet around noon, a funeral service about an hour later, and then the burial; and that he sat with the one-year

5

witness's cousin at the banquet. His one-year witness testified, however, that the funeral service was early in the morning and that she was "[n]ot too clear" about whether she recognized anyone at Zheng's banquet table. Certified Administrative Record ("CAR") at 122-23. These inconsistencies concern an event unrelated to Zheng's allegations of past or future harm; they more closely resemble discrepancies that we have found to be nondramatic, examples of which are set forth in the margin.[1] Although Zheng's counsel declined an opportunity for redirect of the one-year witness and did not ask to recall Zheng, the one-year witness was not confronted with Zheng's

---

[1] *See, e.g.*, *Ming Shi Xue*, 439 F.3d at 126-27 (finding the following to be nondramatic: applicant's assertion that he wanted a second child to help with farm work and subsequent testimony that another family raised his second child; applicant's testimony that his wife gave birth while in hiding, but that she was subject to IUD checkups and returned to work after her pregnancy; and applicant's claim that his wife was forced to have an abortion and descriptions of passive enforcement of the family planning policy in the State Department reports); *Zhi Wei Pang v. BCIS*, 448 F.3d 102, 109-12 (2d Cir. 2006) (finding the following to be nondramatic: applicant's testimony that he and his wife wished to carry her pregnancy to term, but that they stayed in their village until her second trimester; applicant's testimony that he paid only half of a family planning fine and the listing of the child in his household registry; and applicant's omission from his application that he and his wife went into hiding together; applicant's testimony that Chinese authorities removed possessions from their home after the birth of their second child, and his wife had a third life-threatening pregnancy due to an improper forced sterilization). *But see Majidi v. Gonzales*, 430 F.3d 77, 79-80 (2d Cir. 2005) (finding dramatic inconsistency between applicant's assertion that opposition party members ransacked his home while he was away and his testimony that he was present, beaten, and threatened when the opposition party members ransacked his home).

inconsistent testimony and the "questions on cross-examination were general and exploratory in nature." *Zhi Wei Pang v. BCIS*, 448 F.3d 102, 109-10 (2d Cir. 2006) (explaining that requirement that IJ solicit explanations for nondramatic inconsistencies "does not mean that the IJ must duplicate the questions of the government when the government has already noted testimonial flaws on cross-examination[,] [b]ut when the government's cross-examination does not put the applicant on notice of a putative flaw, the government's cross-examination cannot absolve the IJ of the responsibility to make the applicant aware that an explanation is necessary"). The entire cross-examination spans only two pages of transcript, and the Department of Homeland Security ("DHS") counsel's questions related primarily to Zheng's relationship to the witness and the order of events at the funeral. And while DHS counsel specifically asked Zheng about the timing of the burial as compared to the funeral and banquet, DHS counsel did not ask the witness to distinguish the burial from the other events or ask a single question about the burial. We therefore conclude that Zheng should have had an opportunity to address the inconsistencies between his

7

and his one-year witness's testimony before the IJ relied on them.

Additionally, as Zheng argues, the IJ misstated the record when making the inconsistency finding about the one-year witness's cousin. The IJ stated that Zheng "went to the funeral" with the one-year witness's cousin, rather than merely sitting with her at the banquet, and that the one-year witness "did not recognize anyone who sat with" Zheng. Instead, the one-year witness testified that she was not "too clear" about recognizing anyone. CAR at 65, 105, 122. The IJ also stated incorrectly that Zheng testified that the funeral service was in the morning, when Zheng initially testified that he did not "recall too clear; about an hour after the banquet." *Id.* at 65, 105. Although "the agency does not commit an 'error of law' every time an item of evidence . . . is described with imperfect accuracy," *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009), the imprecision underscores the purpose of the requirement to solicit explanations. "Without this requirement, asylum applicants would frequently be denied the opportunity to clarify genuinely consistent testimony that the IJ has unwittingly misconstrued. And, conversely,

8

immigration judges could prematurely decide that testimony is inconsistent when, in fact, the purported discrepancies readily admit of explanations which the IJ would find valid." *Ming Shi Xue*, 439 F.3d at 122.

Second, the IJ failed to solicit an explanation for the inconsistency between Zheng and his other witness's testimony concerning the number of times they practiced Falun Gong together in the United States. Zheng testified that they practiced and attended parades together twice; his witness initially testified that they attended two parades, but had practiced together only once. DHS counsel confronted the witness with Zheng's inconsistent testimony; however, after appearing to testify to having practiced twice with Zheng, the witness reaffirmed that they had practiced together only once. The IJ simply stated that the witness "appeared to change her testimony by claiming that there was a second time," without acknowledging the subsequent clarification. CAR at 66. While these discrepancies do relate to Zheng's current practice of Falun Gong, and thus to his fear of future persecution in China based on his prospective practice, they "are not premised on 'dramatically different' accounts of the

alleged persecution." *Ming Shi Xue*, 439 F.3d at 121; *see supra* n.1. Moreover, although the witness had an opportunity to explain why her testimony was inconsistent with Zheng's, and Zheng's counsel declined an opportunity for redirect examination of the witnesses, Zheng was not himself confronted with the inconsistency before the IJ relied on it to find him not credible.

Whether the IJ also erred by failing to solicit an explanation for the omission from Zheng's application and father's letter regarding the police's post-arrest visits presents a closer question. As the IJ observed, Zheng testified that the police visited his home two or three times after his arrest to look around, but these visits were omitted from his application and father's letter. While these omissions are more obvious than the inconsistencies arising from the witnesses' testimony, as they relate to the Chinese government's continued interest in Zheng in the aftermath of his alleged persecution, they are not "premised on 'dramatically different' accounts of the alleged persecution." *Ming Shi Xue*, 439 F.3d at 121; *see supra* n.1. Moreover, given the issues discussed above, these omissions alone do not constitute substantial

10

evidence for the adverse credibility determination because a lack of detail in an application does not necessarily constitute an omission for the purpose of an adverse credibility determination, and Zheng was not asked a single question about his father's letter. *Pavlova v. INS*, 441 F.3d 82, 90-91 (2d Cir. 2006) ("[A]sylum applicants are not required to list every incident of persecution on their I-589 statements.").

Last, we reject the Government's contention that Zheng had an opportunity to explain because DHS counsel mentioned the inconsistencies and omissions in her closing statement and Zheng's counsel gave a rebuttal. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and *in a meaningful manner*." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted; emphasis added). Zheng was not recalled after his witnesses, DHS counsel did not call Zheng's attention to the inconsistencies and omissions until after the close of evidence, and "the arguments of counsel are not evidence." *Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013). In sum, given the lack of opportunity for explanation, we conclude that the adverse

11

credibility determination is not supported by substantial evidence. *See Ming Shi Xue*, 439 F.3d at 127. Because the BIA did not reach the IJ's alternative burden findings, we also do not reach those findings.

For the foregoing reasons, the petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED for further proceedings consistent with this order. On remand, the agency is directed to address the IJ's responsibility to solicit explanations for putative inconsistencies arising from subsequent witness testimony, particularly where, as here, the applicant was represented by counsel. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12